UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GABRIEL AMPARO,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civ. No. 2:12-cv-6403 (KM)<br><br>OPINION |

### KEVIN MCNULTY, U.S.D.J.:

The plaintiff, Gabriel Amparo, brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner) denying his claim for Social Security Disability Insurance benefits ("SSDI"). Amparo's case presents a complicated set of issues at the intersection of substance abuse and schizophrenia, a major psychological disorder. The ALJ here denied benefits, essentially because he found that substance abuse was a material factor in Amparo's disability. For the reasons set forth below, I reverse that determination and remand the case for further proceedings.

Amparo initially sought benefits from an onset date of October 1, 2008 (later revised to May 3, 2010) [1] through April 28, 2011. Record ("R __") (Docket No. 19) at 15, 42. His application was denied initially and on reconsideration. *Id.* at 1, 22. Amparo appeared before an Administrative Law Judge ("ALJ") on April 4, 2011, for a hearing. R 40, 102. On April 28, 2011, the ALJ issued a decision denying the application. R 32. The Appeals Council affirmed the

---

[1] Amparo amended the onset date in a brief submitted to the first ALJ assigned to the case on January 3, 2011. R 15, 42. *See* Section III, *infra*. I note, by the way, that any flaws in this case might have resulted simply from its transfer between two able and conscientious ALJs.

1

decision of the ALJ on August 1, 2012, rendering it the final determination of the Commissioner. R 1-3.

Amparo now appeals that determination, asserting three claims of error. He argues that (1) a medical advisor was required under the Commissioner's protocol for assessing substance abuse in the presence of other psychiatric impairments; (2) that the ALJ did not conduct a proper Step 3 evaluation; and (3) that the Commissioner failed to carry the burden of proof at Step 5 of the sequential evaluation. *See* Pl. Br. at 11, 17, 20. These claims of error are incorporated in the discussion below.

I find that certain evidence was not fully considered and discussed (section II, *infra*); that an ambiguity about the onset date flawed the analysis (section III, *infra*); and that the "contributing factor" analysis of substance abuse was flawed (sections III & IV, *infra*). Looking at the applicant's well-documented history of schizophrenia, I conclude that the errors were consequential, and that Amparo may well be disabled. I will direct a complete redetermination on remand.

## I. Five-Step Process and This Court's Standard of Review

Review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

> **STEP 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.
>
> **STEP 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.
>
> **STEP 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**STEP 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). If not, move to step five.

**STEP 5:** The burden shifts to the SSA to demonstrate that the claimant, considering his or her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, my review is plenary.[2] As to factual findings, I will adhere to the ALJ's findings, as long as they are supported by substantial evidence.[3] For disputed findings, I will "determine whether the administrative record contains substantial evidence supporting the findings."[4] Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[5] That is "less than a preponderance of the evidence but more than a mere scintilla."[6]

I may, under 42 U.S.C. § 405(g) and the Third Circuit's *Podedworny* opinion, affirm, modify, or reverse the Secretary's decision, with or without a remand to the Secretary for a rehearing.[7]

Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence indicating

---

[2] *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

[3] *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)).

[4] *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).

[5] *Id.*

[6] *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted).

[7] *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Commissioner*, 235 F. App'x 853, 865-66 (3d Cir. 2007).

that the claimant is disabled and entitled to benefits.[8] Here, Plaintiff does not press the claim that the record is complete and that it requires a finding of disability. In the introduction to his legal argument, Plaintiff asks for reversal, but his three arguments, enumerated above, are all phrased in terms of remand. And that makes sense: all argue either a lack of substantial evidence for the ALJ's findings or a procedural error.

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five step inquiry.[9] Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings.[10] It is also proper to remand where the ALJ's findings are not the product of a complete review which "'explicitly' weigh[s] all relevant, probative and available evidence" in the record.[11]

## II. Consideration of All Probative Evidence

The ALJ's decision does not explicitly weigh all relevant, probative and available evidence in the record. What follows is a very brief summary of certain evidence in the record. It is not complete, but it demonstrates gaps in the ALJ's discussion of the record. Facts gleaned from the ALJ's written decision are in regular type; *facts taken from the record, but not referred to in the ALJ's written decision, are in italic type*. The significance of the omitted evidence is obvious; it should be addressed on remand.

Amparo was 29 at the time of the hearing and had an 8th grade education. R 28. He has a history of drug use but had not used since May 2010. *Id.* He lived with his parents and spent time with his (then) one year old son. The son lived with his mother, not with the claimant. *Id.*

---

[8] *Podedworny,* 745 F.2d at 221-222; *Morales v. Apfel,* 225 F.3d 310, 320 (3d Cir. 2000) (citing *Podedworny*); *see also Bantleon v. Comm'r of Soc. Sec.,* 2010 U.S. Dist. LEXIS 99537, at *38-39 (D.N.J. 2010).

[9] *See Podedworny* 745 F.2d at 221-222.

[10] *See Burnett v. Commissioner of SSA,* 220 F.3d 112, 119-120 (3d Cir. 2000); *Leech v. Barnhart,* 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable.").

[11] *Adorno v. Shalala,* 40 F.3d 43, 48 (3d Cir. 1994).

4

*Amparo has a prior felony conviction (unspecified), as well as a history of petty crimes. R 115. Amparo's full work history is not clear from the record. Amparo's financial records show he had not worked since 2002, when he earned $563.20. R 81, 119. However, the work history form he submitted showed he worked as a handyman in an auto-shop from 2006-2007 for $400 a week. R 131.*

*Amparo is right-handed. A tendon in his left hand was cut as a result of an assault, and he had surgery to repair it. R 28.*

*Amparo testified at the hearing that he was unable to work because of he was enrolled in a partial hospitalization program, heard voices, and had difficulty concentrating. R 28. He stated that he hears voices all day long and that it made it hard for him to concentrate in his group therapy. R 28, 45.*

*Amparo continued to attend the partial hospitalization program for his schizophrenia at the time of the hearing, and continued to live with his parents. R 45-46. Amparo's complaints of, e.g., hearing voices are corroborated by the record. Liberty Health Hospital records from March 22, 2008, indicate he was seen in the emergency room for auditory hallucinations, and was admitted. See R 244-85. An assessment from that stay indicated that Amparo had "emotional problems" as a limitation. R 271. His diagnosis was "psychotic disorder" and he was prescribed the antipsychotic medication Risperdal. R 282-83.*

*In December 2009, Amparo was again admitted to Liberty Health Hospital for a psychotic episode. He reported hallucinations. R 343. He was prescribed the antipsychotic medication Invega. R 345. The records noted his problems with drug abuse. R 346. His mental assessment noted he had "poor" intellectual function, insight and judgment. R 348. He was diagnosed with schizophrenia. Id. During that hospitalization, he tested positive for PCP. R 350. His treating physicians recommended that he be admitted to a rehabilitation center as soon as possible. R 359. His progress notes indicate he was not compliant with treatment.*

*In 2009, Amparo was referred to Liberty Health Medical Center from Hudson County Superior Court after being arrested for possession with intent to distribute a controlled dangerous substance. R 289. His assessment described paranoid and hallucinatory symptoms. R 289-90. He was prescribed Risperdal in prison. R 291. The assessment also stated that he had a criminal history and history of drug abuse, and had a history of eight prior hospitalizations, including 30-60 days in the psychiatric unit at Northern State Prison. R 292. The records*

*also indicate he had a family history of psychiatric illness, and a history of sexual abuse. R 294-95.*

A June 24, 2009 medical note from Amparo's therapist at Jersey City Medical Center indicated that he was enrolled in partial hospitalization program. His treatment consisted of medication, as well as group and individual therapy. R 28 (citing Ex. 12F); R 336.

At the request of the Administration, Amparo underwent an internal medicine consultative examination by Dr. Eyassu on March 31, 2010. He presented with complaints of incomplete ability to flex a finger on his left hand, hypertension, and schizophrenia. R 28. Other than decreased sensation and inability to flex his left index finger more than 50%, the physical examination was normal. A chest x-ray was also normal. Dr. Eyassu diagnosed Amparo with hypertension, stable without medication, and status post left index finger tendon repair. *Id.* (citing Exs. 16F, 17F).

Amparo also underwent a neurological consultative examination by Dr. Candela on April 6, 2010. Amparo told the examiner that from 1999 to February 2010, he abused PCP, ecstasy, and marijuana. *Id.* His longest period of abstention from drug use occurred while he was incarcerated. His psychiatric background included being in a partial hospital program and outpatient program for drug abuse for year, on and off, until February 2010. *Id.* He has been hospitalized three times[12] for schizophrenia due to being paranoid and having auditory hallucinations while on PCP. His medications included Trazadone (for sleep) and monthly Invega injections. *Id.* He reported to Dr. Candela that he was better with medication and that he was no longer using drugs. He also was no longer in the day hospital but was receiving monthly outpatient treatment. *Id.* His mental examination was normal. Dr. Candela believed that Amparo's schizophrenia symptoms were drug induced. He was diagnosed with drug induced schizophrenia, stable with medication; chronic polysubstance abuse, low average level of intellectual functioning, and orthopedic left hand difficulty. R 28-29. Dr. Candela assessed Amparo as having a Global Assessment of Functioning of 60, denoting moderate symptoms or moderate impairment in school, social or occupational functioning. R 29 (citing Ex. 18F).

---

12    Dr. Kleinmann, *infra*, reported four hospitalizations.

*The ALJ's decision does not separately discuss the April 4, 2010 RFC assessment done by state examiner Dr. Wayne Tillman. R 381-98. The ALJ possibly conflated that assessment with Candela's exam.*

A Mental Impairment Questionnaire was submitted by Dr. Kleinmann on October 27, 2010. *This impairment evaluation was conducted 8 months after Amparo last abused drugs. R 29 (citing Ex. 23F).* Kleinmann's Questionnaire indicated that Amparo was diagnosed with schizophrenia, paranoid type; had legal and financial issues; and had a current Global Assessment of Functioning of 45-50 and a past Global Assessment of Functioning of 50-60. *Id.* Amparo continued to complain of paranoia and auditory hallucinations. He denied commands of suicidal or homicidal ideation. *Id.* He was prescribed Invega Sustena injections. Amparo's symptoms included appetite disturbance with weight change, decreased energy, generalized persistent anxiety, difficulty thinking or concentrating, emotional withdrawal or isolation, perceptual or thinking disturbance, hallucinations or delusions, illogical thinking, vigilance and scanning, and pathologically inappropriate suspiciousness or hostility. *Id.* Persistent nonorganic disturbance of vision, speech, hearing, use of a limb, movement and its control of sensation was also noted. *Id.* Dr. Kleinmann found that Amparo had a medically documented history or chronic organic mental, schizophrenic, or affective disorder or at least two years duration that caused more than a minimal limitation of ability to do any basic work activity, with symptoms or signs currently attenuated by medication or psychosocial support. Dr. Kleinmann also found that Amparo had had three or episodes of decompensation within 12 months, each lasting at least two weeks, and a residual disease process that has resulted in such marginal adjustment that "even a minimal increase in mental demands or change in the environment was predicted to cause decompensation. *Id.*

Treatment notes from Hoboken University Community Mental Health Center ("HMHC") covering the period from May 3, 2010 to November 17, 2011, show that Amparo attended a partial hospitalization program. The records "show he reported improvement with treatment." *Id.* (citing Ex. 24F). The ALJ also wrote that Amparo indicated that he had been "off medication" since February 2010 but did not have any symptoms. *Id.*

*The notation that Amparo was "off medication" is not relevant to the HMHC records, although the ALJ noted it in the context of his brief citation of those records. Amparo was off medication for 2 months <u>prior</u> to his admission to*

7

*the partial day program in May 2010. However, Amparo was medicated as part of his treatment at HMHC.*

*The ALJ's decision does not otherwise substantively discuss Amparo's records from HMHC, where he attended the partial hospitalization program to treat his schizophrenia from May 2010 through his hearing date. Amparo attended the program five days a week and also attended substance abuse counseling as part of his treatment plan. R 429. During his treatment at HMHC, Amparo continued to show symptoms of schizophrenia.[13] While participating in the program, Amparo had "persistent" auditory hallucinations and paranoia. R 433. Amparo's Invega dosage increased from May 2010 to February 2011 (the period of treatment covered by the record) to combat his persistent symptoms. See R 426-433.*

### III. Onset Date/Effect of Substance Abuse

Amparo originally sought benefits starting from October 1, 2008. He amended the onset date, however, in a brief submitted on January 3, 2011, to the ALJ initially assigned to the case. R 15, 42. At the hearing, the questions of the second ALJ appeared to focus appropriately on Amparo's post-May 3, 2010 impairments. In his decision, however, the ALJ reverted to the original, 2008 onset date, and analyzed the entire October 1, 2008 to April 28, 2011 period as a unit. R 22, 44. On appeal, both the Plaintiff's Brief (Docket No. 22) and the Government's Brief (Docket No. 25) take the ALJ's analysis on its own terms, and treat 2008 as the onset date.

This is not merely a quibble over dates. As noted above, disability benefits are disallowed if alcoholism or drug addiction would be a "contributing factor material to the Commissioner's determination" that the individual is disabled. 42 U.S.C. § 423(c) (2)(C). Thus, Amparo's substance abuse in 2008 or 2009 would weaken the basis for a finding of disability in the pre-2010 period. As of May 3, 2010, however, Amparo had entered the HMHC partial hospitalization program. And the evidence is uncontradicted that, from May 2010 on, Amparo was not abusing drugs. *See* R 29-30, 402-433 (HMHC records). However, the clear sense of the ALJ's decision is that Amparo suffered psychological symptoms *while* using drugs and that those symptoms would largely disappear if he stopped using drugs. R 29-31. This conclusion overlooks the medical evidence in the record that demonstrates that Amparo's symptoms

---

[13] As noted herein, this evidence is inconsistent with the ALJ's conclusion that Amparo's impairments would be largely abated through abstinence from drugs.

8

persisted after he stopped using drugs.[14] R 402-433 (HMHC records from 2010-2011).

No doubt that is why Amparo revised his application so that it sought a disability determination starting May 3, 2010, rather than the earlier 2008 date. As noted above, substance abuse is not relevant to Amparo's claim for benefits after May 3, 2010—and Amparo seems to have conceded, at least at one point, that he is not claiming disability before that date. Therefore, as necessary, the ALJ should explicitly state the appropriate onset date for benefits within the framework set forth by the regulations. *E.g.*, SSR 83-20; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 548 (3d Cir. 2003).

I think that if the ALJ's decision had focused on an onset date of May 3, 2010, the conclusion that substance abuse was a disqualifying factor might well have been different. At any rate, it should have been considered—and considered in light of *all* the pertinent evidence. As noted above, the ALJ's decision does not weigh and discuss the HMHC records, which are particularly relevant to the period beginning in May 2010.

For this reason, too, I will order the matter remanded.

### IV. Amparo's Claims of Error

Sections II and III, above, set forth sufficient grounds for a remand. I now focus on Amparo's specific claims of error.

Amparo makes three claims of error arising from Steps 3, 4, and 5 of the sequential analysis: (1) that the ALJ did not properly consider his substance abuse impairment in the context of his other impairments at Step 3; (2) that the ALJ improperly assessed his RFC to perform work at Step 4 because expert medical evidence was not used to assess his substance abuse in the presence of his other psychiatric impairment;[15] and (3) the Commissioner has failed to carry her burden of proof at Step 5. Pl Br. at 9, 11, 20. For the reasons discussed below, the claims of error raised by Amparo also merit a remand to the ALJ for further proceedings.

---

14    The evidence in the record also indicates that Amparo's schizophrenia symptoms pre-dated his drug use. R 244-285 (records from Amparo's 2008 hospitalization).

15    The second issue implicates Step 5 as well as Step 4.

9

As suggested by Points II and III, above, these claims of error apply differently to the 2008-April 2009 period and the period starting at the amended onset date of May 3, 2010. Substance abuse is not a continuing impairment supported in the record after May 3, 2010. Therefore, the appropriate analysis as to Amparo's impairments from May 3, 2010, forward would not include substance abuse. *See* Section III, above.

### A. Combined Effect of Impairments at Step 3

Amparo argues that the ALJ did not properly consider the combined effect of his impairments at Step 3. I agree. This issue is affected, and might be mooted by, the onset-date issue, but I discuss it for guidance on remand.

There is no dispute as to Steps 1 and 2. The ALJ found at Step 1 that Amparo had not engaged in substantial gainful activity since October 1, 2008 (the onset date originally claimed). R 24. At Step 2, he found that Amparo had the following severe impairments: schizophrenia, polysubstance abuse, and finger flexion limitation. *Id.* (citing 20 CFR 416.920(c)). The ALJ further found that, even excluding the effects of substance abuse, Amparo's impairments were severe. R 26.

At Step 3 of the sequential analysis, the ALJ must evaluate the claimant's impairments to determine if they meet or equal an impairment in the Listing of Impairments in Appendix 1. 20 CFR § 404.1520(a)(4)(iii). In doing so, the ALJ must consider the "combined effect of all the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(c)(2)(B); *see also* 20 CFR 404.1526(a). If a severe combination of impairments is found, the combined impact of the impairments is considered throughout the rest of the sequential analysis. *Id.* The ALJ can find medical equivalence to a listed impairment in three ways:

> (1)(i) If you have an impairment that is described in appendix 1, but—
> (A) You do not exhibit one or more of the findings specified in the particular listing, or
> (B) You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing,

10

> (ii) We find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.
> (2) If you have an impairment(s) that is not described in appendix 1, we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairment(s) are at least of equal medical significance to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing.
> (3) If you have a combination of impairments, no one of which meets a listing (see § 404.1525(c)(3)), we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to the listing.

20 CFR § 404.1526(b). Although the claimant bears the burden of proving that his impairments equal or meet one listed in Appendix 1, it is the ALJ's "responsibility ... to identify the relevant listed impairment(s) and 'develop the arguments both for and against granting benefits.'" *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 n. 2 (3d Cir. 2000) (quoting *Sims v. Apfel*, 530 U.S. 103, 111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000)).

Here, although the ALJ considered both substance abuse and Amparo's other impairments, he did so separately. First the ALJ considered Amparo's substance abuse impairment in isolation. He found that Amparo's "substance use disorder" did not meet listings 12.03 or 12.09. R 25. Listing 12.03 applies to schizophrenic, paranoid, and other psychotic disorders, and 12.09 applies to substance abuse, but the ALJ did not explicitly distinguish them.

The ALJ cited the "paragraph B" criteria to evaluate whether Amparo's substance use disorder was at the required level of severity.[16] He found it was not, noting that Amparo only had moderate restrictions in daily living and social functioning, and marked difficulties in concentration, persistence, or

---

[16] The ALJ did not cite under which listing he applied this criteria, which appears in 12.03, as well as in 12.02, 12.04, 12.06, and 12.08. Under the substance abuse listing at 12.09, the criteria from these other listings can be applied to show the required level of severity for a 12.09 impairment.

11

pace, and that he had experienced "one to two" episodes of decompensation. *Id.* In making this finding the ALJ specifically referred to Amparo's "substance use disorder" and did not refer to his schizophrenia. Therefore, even though the ALJ referred to listing 12.03 at the beginning of the discussion, it does not appear he was here considering schizophrenia in combination with substance abuse. (The orthopedic impairment of Amparo's finger was also omitted, but I regard that as far less significant.)

Some paragraphs later in the decision, after discussing Amparo's RFC in light of substance abuse, ALJ Andres looked at the schizophrenia and finger impairments in isolation. R 26. The ALJ does not specifically refer to Amparo's schizophrenia anywhere in this Step 3 discussion (although he does do so at Step 4). But because he refers to the "remaining limitations" generally, I infer that this discussion might have been meant to encompass both the schizophrenia and orthopedic impairments. The ALJ found that those impairments would not meet or medically equal the criteria of listing 12.03. R 26-27. He concluded that Amparo would only have mild restrictions of daily living and social functioning if he stopped abusing substances, and only moderate difficulties with concentration, persistence and pace. R 27. The ALJ also found that Amparo's orthopedic impairment did not affect his ability to ambulate effectively or perform fine or gross manipulations. *Id.*

In this disjointed discussion, the ALJ failed to adequately consider the combined impairments. It appears that the ALJ glossed over his analysis of the combined effects of Amparo's impairments because he regarded Amparo's substance abuse as the central, disqualifying issue. The ALJ's Step 3 analysis of the remaining impairments (perhaps understandably in light of his later substance abuse/materiality finding) did not adequately analyze the severity of the combined impairments. *See* R 26-27 (stating that later discussion in the decision of Amparo's limitations in the context of his RFC informed ALJ's assessment of the severity of his mental impairment at Step 3). As a result, the ALJ short-changed the analysis of Amparo's impairments at Step 3. This procedural error is, by itself, enough to merit remand. *See Torres v. Comm'r Soc. Sec.*, 279 F. App'x 149, 152 (3d Cir. 2008).

Of course, for the reasons stated above, substance abuse may be of less significance, or no significance, for the post-May 3, 2010 period. On remand, however, the ALJ should conduct the Step 3 analysis of the impairments in combination. As discussed above, *all* impairments must be considered in combination to assess whether they meet or medically equal a listed

impairment. 20 CFR 104.1526(a). And that analysis must include a thorough assessment of the combined effect of Amparo's schizophrenia and orthopedic impairments *without* substance abuse, in particular from May 3, 2010 forward. Finally, on remand, the ALJ should also consider whether Amparo's limitations from schizophrenia meet the "paragraph C" criteria (as well as the "B" criteria) listed in 12.03. Amparo's repeated episodes of decompensation and need for a supportive living arrangement should be considered within the paragraph C analysis.

### B.   Other Claims of Error At Steps 4 and 5

The materiality of substance abuse is also central to Amparo's two remaining claims of error. These issues, too, are affected, and might be mooted in whole or in part, by the onset-date issue, but I discuss them for guidance on remand.

At Step 4, the ALJ made two RFC determinations: one including substance abuse and one excluding substance abuse. Including substance abuse with Amparo's schizophrenia and orthopedic impairments, the ALJ found that Amparo had the RFC to perform medium work with the following non-exertional limitation: his mental capacity was "severely restricted" as a result of his impairments, including the alcohol abuse disorder. *Id.* Therefore, the ALJ found that Amparo did not retain the RFC to perform even the basic mental demands of unskilled work. R 25. When the ALJ excluded substance abuse from his RFC determination, however, he concluded that Amparo would have the RFC to perform medium work as defined in 20 CFR 416.967(c) "except considering his mental impairment he is capable of understanding and executing instructions; able to with some difficulty maintain concentration, persistence and pace; and able to with some difficulty relate and adapt in work like settings." R 27.

At Step 5, the ALJ considered the "substance use disorder" in conjunction with Amparo's other impairments, and found that there were no jobs in the national economy that the claimant could perform. R 26 (citing 2 CFR 416.960(c) and 416.966). The ALJ found that the limitations from Amparo's impairments, including substance use disorder, "so narrow[ed] the range of work" that Amparo could perform, that a finding of disability was appropriate. *Id.* The ALJ also found, however, that if Amparo did not engage in substance abuse, he would, despite his other impairments, retain the RFC to perform "unskilled medium work." R 32. In short, then, the ALJ found that

13

substance abuse was a material contributing factor to Amparo's inability to perform work existing in the national economy, and therefore disallowed benefits.

An individual seeking benefits shall *not* be considered disabled if alcoholism or drug addiction would be a "contributing factor material to the Commissioner's determination" that the individual is disabled. 42 U.S.C. § 423(c)(2)(C). Although there is limited authority regarding the determination of materiality, internal SSA guidelines instruct that "[w]hen it is not possible to separate the mental restrictions and limitations imposed by [drug addiction and alcoholism] and the various other mental disorders shown by the evidence, a finding of 'not material' would be appropriate." EM-96200 (response to question 29); *see also McGill v. Commissioner of Soc. Sec.*, 288 F. App'x 50, 52 (3d Cir. 2008) (not precedential).

Amparo asserts that a medical expert was required to assess his substance abuse in conjunction with his additional impairment of schizophrenia. Pl. Br. at 11. That claim does not require remand or reversal. The Third Circuit has declined to require expert psychiatric opinion evidence for the determination that substance abuse is material to the finding of disability. *McGill*, 288 F. App'x at 53; *accord Cage v. Commissioner of Soc. Sec.*, 692 F.3d 118, 126 (2d Cir. 2012). As the Third Circuit explained, no such requirement is implied by 42 U.S.C § 423(d)(2)(C). *Id.* at 22-23. While not required, however, this type of evidence may be quite helpful in this case for assessing Amparo's substance abuse—*if* it remains an issue (for example, if benefits prior to May 2010 remain at issue for some reason). As I have said, however, substance abuse from May 2010 on is not supported by the record.

Amparo also asserts that SSA did not meet its burden of proving at Step 5 that there exist jobs in the national economy that the claimant could perform. *Id.* at 20-21. That claim of error merits closer consideration. Amparo specifically objects to the ALJ's failure to take additional vocational evidence to determine how his non-exertional restrictions affected his ability to perform work. Pl. Br. at 23. He also more generally objects to the ALJ's finding that substance abuse was material, arguing that the determination at Step 5 rested on the improper "juxtaposition of two RFCs." *Id.* at 27. I find that the ALJ's materiality finding is not supported by the substantial evidence and thus conclude that the ALJ erred at both Steps 4 and 5.

14

The ALJ found that, but for his substance abuse, Amparo was equipped to do the "full range of medium" work and that his limitations would have "little to no effect on the occupational base." R 32. This finding was based on the ALJ's dual RFC determinations of Amparo's impairments with and without substance abuse, which informed his overall conclusion that substance abuse was a factor material to the determination of disability. *See* R 27-32. As noted above, however, the two RFC determinations do not clearly contrast the combined impairments with and without substance abuse.

The Third Circuit has not decided whether the claimant or the Commissioner bears the burden of showing the materiality of substance abuse. *McGill*, 288 F. App'x at 52 (finding that issue was not dispositive because Commissioner would have met burden that that substance abuse was dispositive).[17] I do not decide it either. Either way, I am not convinced that the ALJ's determination was supported by substantial evidence.

The ALJ almost wholly relied on the neurological consultative exam of state examiner A.J. Candela, PhD. Candela evaluated Amparo on April 6, 2010 (prior to Amparo's admission to the HMHC program). His report stated that he believed that Amparo's schizophrenia was drug induced, and stable with medication. R 28-29. State examiner Wayne Tillman, PhD, examined Amparo on April 14, 2010 (also prior to his admission to the HMHC program). Tillman found that, while sober, Amparo still had moderate difficulties in social functioning and in maintaining concentration, persistence, or pace. R 391. The ALJ does not specifically refer to Tillman's evaluation, although he does cite to the relevant exhibit in his RFC discussion. R 31.

The ALJ's conclusions from this evidence were excessive. Tillman's RFC assessment found mild to moderate mental limitations and concluded that Amparo could "with some difficulty" relate and adapt in work like settings. R 395-397. From this and Candela's assessment, the ALJ drew the unwarranted conclusions that Amparo had "no problem" concentrating, did not have a problem thinking, had no memory problems, was able to pay attention, and

---

17    Other Circuits have held that the Commissioner has the burden on this issue. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001); *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999).

15

was adaptable. R 31. Moreover, neither the state examiners nor the ALJ adequately considered Amparo's repeated episodes of decompensation.[18]

The ALJ's treatment of the evidence of Candela and Tillman might not, in itself, have required remand. But because I am remanding on other grounds, I will direct that all of this evidence be reconsidered and reweighed in context. That context is as follows.

The balance of the evidence in the record further undermines the ALJ's conclusion that Amparo's limitations were the result of his drug use. In addition to showing Amparo's history of substance abuse prior to 2010, the medical evidence thoroughly documents Amparo's schizophrenia diagnosis and treatment beginning in 2008. *See e.g.* R 244-285 (Liberty Health Hospital records covering March 2008 hospitalization for psychotic episode); R 339-385 (Liberty Health Hospital records documenting treatment for psychotic episode in December 2009). Notably, Amparo's treatment for schizophrenia began *before* substance abuse was noted in his medical records and continued *after* the last known time he abused drugs. Moreover, *all* of the medical evidence after Amparo's amended onset date of May 3, 2010, pertains to his schizophrenia, not to drug abuse.

Amparo was prescribed psychotropic medication for schizophrenia, including Invega (an antipsychotic medication which he received by injection) and Geodon (another antipsychotic medication). R 48, 402. Before May 2010, Amparo was not consistently compliant with medication. Amparo testified that the Invega dosage was increased because it was not adequately controlling his symptoms. R 48. The medical records support this assertion: Amparo's Invega injection dose was increased to 234 mg[19] in December 2010. R 180, 431. I pretend to no medical expertise, but to me that evidence suggests a serious and intractable condition, and it should be considered on remand.

In May 2010, Amparo began attending a partial hospitalization program at HMHC for schizophrenia, paranoid type. R 402. (He was still attending the program at the time of his hearing in April 2011. R 45.) The program ran from 9:00am to 3:00pm, Monday through Friday. R 81. Amparo's treating physician,

---

[18] Dr. Candela's assessment notes that he had insufficient evidence to assess episodes of decompensation. R 391.

[19] This is the largest dose available for a single injection.

16

Dr. Richard Kleinmann, reported in October 2010 that Amparo continued to complain of paranoia and auditory hallucinations and thus could not be considered to be in remission. R 402. At the time of that assessment, Amparo was receiving 156 mg of Invega. *Id.* Dr. Kleinmann rated Amparo's mental abilities for unskilled work as varying between "seriously limited," "unable to meet competitive standards," and "and no useful ability to function." R 404. His most severe limitations were in relation to working in coordination with others without distraction, completing a normal workday and workweek without interruptions from symptoms, accepting instructions and criticism, responding appropriately to changes, dealing with normal work stress, and setting realistic goals or plans.[20] *Id.* As to Amparo's functional limitations, Dr. Kleinmann found that Amparo had "mild" restrictions for daily living, but "marked" difficulties in maintaining social functioning, and "extreme" difficulties in maintaining concentration, persistence, or pace. Amparo had experienced "four or more" episodes of decompensation within the last 12 months for a duration of two weeks or more. R 406.

Kleinmann's evidence is strong and persuasive. It comes from a treating physician, and is therefore entitled to particular weight. And it centers around the most relevant time period: post May 3, 2010. The ALJ's failure to adequately discuss and weigh it would constitute an independent error requiring remand.[21]

In sum, the medical evidence perhaps could support a conclusion that substance abuse was a substantial contributor to Amparo's limitations before May 2010. But even in that pre-2010 period, the substantial evidence of record developed by the ALJ does *not* supply the means to disentangle Amparo's mental impairments from substance abuse. During the period from October 2008 to May 2010, the mental restrictions and limitations imposed by substance abuse and schizophrenia are inextricably intertwined. Even for this

---

[20] Dr. Kleinmann also found extreme limitations regarding semi-skilled and particular jobs. R 405.

[21] The ample evidence of Amparo's schizophrenia contrasts with other cases where substance abuse was found material in the context of a relative lack of evidence of the concurrent mental impairment. *Cf. McGill*, 288 F. App'x at 52-53 (affirming ALJ's finding of materiality where there was little to no evidence of the additional mental impairment); *Mirabile v. Comm'r of Soc. Sec.*, 354 F. App'x 619, 623 (3d Cir. 2009) (same). Here, the evidence is clear that Amparo has a significant history of schizophrenia with persistent symptoms and effects.

17

period, then, the ALJ's finding that substance abuse was "material" were not sufficient. *See* EM-96200. If the pre-2010 period is considered on remand, the ALJ should make specific findings, based on all the evidence, as to the effect of substance abuse, if it can be isolated.

But particularly as to the post-May 2010 period, when no substance abuse occurred, the ALJ's determination of the materiality of Amparo's substance abuse is not supported by the substantial evidence of record. The ALJ's findings at Steps 4 and 5 must therefore be vacated and remanded. Both the RFC determination at Step 4 and the occupational analysis at Step 5 rested on the ALJ's ultimate finding that substance abuse was a material factor. R 32. Accordingly, ALJ's decision will be remanded, in the alternative, for the errors made at Steps 4 and 5, in addition to the error at Step 3 discussed above.

Before closing, I address one more miscellaneous matter. On remand, the ALJ should to fully analyze Amparo's non-exertional restrictions and his ability to perform other jobs in the national economy. The ALJ should not (as is appropriate in many cases) rely on his own impressions as to the effects of the claimant's limitations with respect to the occupational base. Amparo's mental impairments present a complex set of restrictions, and as such, would profit from the consideration of additional vocational evidence. *See Sykes v. Apfel*, 228 F.3d 259, 261 (3d Cir. 2000); SSR 85-15, 1985 WL 56857 at *3 (S.S.A.) (explaining that regarding simple issues, the regulations may provide sufficient guidance, but that in more complex cases, "a person or persons with specialized knowledge would be helpful"). The Kleinmann evidence is strongly corroborative of the claimant's position on this issue.

## V. Conclusion

For the foregoing reasons, the ALJ's decision is remanded for further proceedings. On remand, the ALJ shall comply with the guidelines set forth in this Opinion.

Dated: July 31, 2014

*[signature]*

**Hon. Kevin McNulty**
**United States District Judge**

18