UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GABRIEL AMPARO,**<br><br>Plaintiff,<br><br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>**Defendant.** | Civ. No. 2:12-cv-6403 (KM)<br><br>**OPINION**<br>**(Not for publication)** |

**KEVIN MCNULTY, U.S.D.J.:**

    This matter comes before the Court on the application of the plaintiff's attorney, James Langton, Esq., of Langton & Alter,[1] to be awarded attorneys' fees in the amount of $8,790. Langton's firm represented the plaintiff, Gabriel Amparo, on appeal under 42 U.S.C. § 405(g) from the Commissioner's denial of Social Security Disability Insurance benefits ("SSDI"). Plaintiff prevailed, and Langton seeks reimbursement of his fees from the Social Security Administration, pursuant to the fee-shifting provisions of the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. The Commissioner concedes that Langton is entitled to fees, but disputes the amount claimed. I write this short unpublished opinion for the benefit of the parties, who are familiar with the facts and proceedings in this case.

    As to counsel's entitlement to a fee award, there is little doubt. The Commissioner does not dispute that Amparo was the "prevailing party" here, and does not argue that the position of the United States was "substantially justified." *See* 28 U.S.C. § 2411(d)(1)(B). That concession is sound. In an opinion and order dated July 31, 2014, I reversed the final decision of the Agency, and remanded the matter for further proceedings. The basis of my

---

[1] "Langton," as used herein, refers interchangeably to the attorney and the firm. Some of the work was actually performed by Mr. Alter.

1

decision was a finding, under a government-friendly standard of review, that the ALJ's decision was not supported by substantial evidence. (Docket no. 30)

The remaining issue, then, is whether the dollar amount of Langton's claim for fees is within the bounds of reasonableness.

At a minimum, an attorney seeking fees must "submit evidence supporting the hours worked and rates claimed." *See Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). The documentation of hours and rates is not at issue here; Mr. Langton has submitted copies of the time records of his firm, and the government does not dispute their genuineness. (Docket no. 32-5) Likewise, the government does not dispute counsel's calculation of the adjusted EAJA rate at $183.90 per hour. (Docket no. 32-2 at ¶4)

The party seeking fees also has the burden of showing that the dollar amount of the request is reasonable. *Id.*; *see generally Hensley v. Eckerhart*, 461 U.S. 424, 433, 437 (1983) (court has discretion to deny award of fees that are excessive or unreasonable). In evaluating an EAJA fee application, a court is to apply "traditional equitable principles." *Meyler v. Commissioner of Social Security*, 2008 WL 2704831 at *2 (D.N.J. July 7, 2008) (citing *Taylor v. United States*, 815 F.2d 249, 252 (3d Cir. 1987)). And the statute itself provides that "[t]he court, in its discretion, may reduce the amount to be awarded pursuant to this subsection, or deny an award, to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy." 28 U.S.C. § 2412(d)(1)(C).

The party opposing a fee request has the burden to submit objections that are specific and well-supported. *See United States v. Eleven Vehicles*, 200 F.3d 203, 211-12 (3d Cir. 2000); *Bell v. United Princeton Properties*, 884 F.2d 713, 715 (3d Cir. 1989). Here, the government makes two contentions: (1) that the Court should disallow fees for time spent litigating the timeliness of the appeal; and (2) that the hours spent in preparing plaintiff's brief are excessive because the brief consists largely of boilerplate from briefs previously filed by the same firm.

### 1. The motion to dismiss the appeal as untimely

I addressed the timeliness of this appeal in an opinion filed December 19, 2013. (Docket no. 17) The deadline to appeal fell on October 6, 2012; this

2

action was filed approximately five days late, on October 11, 2012. The reason, according to Mr. Amparo, was that he had visited a Social Security district office on September 25, 2012, and believed that a claims representative there had granted him a 30-day extension. Amparo was not represented by counsel at the time. Only thereafter, on approximately October 4, 2012, did Mr. Amparo consult with counsel (*i.e.*, Mr. Langton's firm). The complaint, as filed by counsel on October 11, 2012, recited that an extension had been given. No such extension could be valid, however; such an extension must be obtained in writing from the Appeals Council. *See* 20 C.F.R. § 422.210(c); *id.* at § 405.505; *id.* at § 405.20.

The Commissioner moved to dismiss the appeal as untimely. (Docket no. 12) Amparo's briefing in response consisted of a 2-page letter from his attorney, citing no law but relating the facts surrounding Amparo's visit to the Social Security Office on September 25, 2012. (Docket no. 13) Submitted with the letter was a short, eight-paragraph affidavit of Mr. Amparo relating the same facts. Two exhibits were attached. *Id.*

I denied the motion to dismiss without oral argument. My opinion provided that the deadline would be equitably tolled for five days because the then-*pro se* plaintiff had taken actions that he mistakenly, but not unreasonably, believed were sufficient to extend the deadline. (Docket no. 17)

Plaintiff's counsel billed 11.65 hours in connection with the motion to dismiss the appeal as untimely. The Commissioner replies, in essence, that all of this motion practice would not have been necessary but for counsel's failure to file the appeal on time. Even if Amparo himself did not know that a claims representative cannot grant an extension, the government contends, experienced plaintiffs' counsel should be charged with such knowledge.

When Amparo first consulted with counsel, on October 4, 2012, the deadline had about two days to run. Mr. Langton argues with some force that it would have been impossible to obtain and review the administrative record and file a proper complaint within that time. Perhaps counsel, acting with ideal alacrity, could have sought and obtained an extension in writing from the Appeals Council. That would depend, I suppose, on how quickly that body responds to such applications, but there is no record that counsel tried. At any rate, when Amparo first retained counsel, he had already dug himself into the hole that counsel, one way or the other, would have to pull him out of. And there is certainly enough fault to go around. On September 25, 2012, the SSA

3

was seemingly aware that Amparo was visiting its office for the very purpose of ensuring that he did not miss the deadline. That he did miss the deadline can be traced, at least in part, to the Administration's failure to advise him of the proper procedures. Applying traditional equitable principles, I see no sufficient basis to treat plaintiff's response to the motion to dismiss as superfluous or unwarranted.

That said, some of the time appears excessive. On July 26, 2013, counsel billed 2.5 hours to "Research, prepare and submit Memorandum in opposition to Motion to Dismiss." As noted above, that Memorandum is a 2-page letter. And that letter largely repeats the facts contained in the accompanying Affidavit (preparation of that Affidavit is billed separately). On August 8, 2013, counsel billed 2.0 hours to "Receive and review Defendant Reply and Declaration." That government Reply consisted of a 6-page brief, which added very little that was new, but reiterated the points in the main brief. The Declaration, consisting of nine short paragraphs, is 1½ pages long, with a short exhibit attached. This combined submission would not have taken long to review; moreover, as a Reply, it called for no response from plaintiff. On December 19, 2013, counsel billed 1.75 hours to reviewing and discussing with the client my 5-page opinion of that date, which denied the motion to dismiss. The upshot of the opinion was that plaintiff's appeal was not untimely; there would seem to be little to discuss.

I will give the benefit of the doubt to the July 26 entry, but deduct 1 hour from the August 8 entry and .5 (1/2) hour from the December 19 entry.

### 2. Plaintiff's main brief

The Commissioner next argues that counsel's billing of 23.75 hours to reviewing the record and drafting Amparo's main brief on appeal was excessive.

The district courts are required to be faithful stewards of the public funds expended for attorneys' fees. Thus courts have reduced counsel's time charges where a brief, even if substantial, contained "little new material." See *Figueroa v. Comm'r of Soc. Sec.*, Civ. No. 09-03601 (D.N.J. July 12, 2010) (allowing only 14 of the 28 hours billed for review and brief preparation); *Bantleon v. Comm'r of Soc. Sec.*, Civ. No. 09-02888 (D.N.J. Oct. 4, 2010) (hours similarly reduced from 23.5 to 14.2). Langton's status as a highly experienced practitioner in this area must be taken into account; "when Plaintiff's attorney is experienced in [the] field, [the] Commissioner is entitled to additional efficiency." *Menter v. Astrue*, 572 F. Supp. 2d 563, 566 (D.N.J. 2008) (citation

4

omitted). *See also Gillem v. Astrue,* Civ. No. 06-6184, 2008 WL 1925302 (D.N.J. April 20, 2008) (disallowing some of time billed for preparation of brief, noting that case was "routine," counsel had "expertise in this area of the law," and that the administrative record, although lengthy, contained many pages of "routine forms, letters and non-medical evidence").

The time entries challenged by the Commissioner break down as follows:

| Date | Description | Hours |
|---|---|---|
| 1/14/14 | Review medical and vocational exhibits to prepare File (Did not Represent at Administrative level) | 4.75 |
| 3/5-3/7/14 | Review medical exhibits, research and prepare rough draft of plaintiff's brief[2] | 14.75 |
| 3/11/14 | Prepare and submit final draft of Plaintiff's brief to court | 4.25 |
| | TOTAL | 23.75 |

The result of this work was a 30-page Plaintiff's brief. (Docket no. 22)

As the Commissioner points out, however, over 20 of those 30 pages comprise material cut-and-pasted from briefs previously submitted by the Langton firm. The Commissioner attaches excerpts of briefs submitted by Langton in prior cases. These contain lengthy sections substantially identical to the corresponding sections of the Amparo brief. (Docket nos. 33-4, 33-5)

For example, the introductory section of Amparo's brief, pages 1-9, consists of boilerplate law regarding the Agency's decision-making standards and the standard of review. Those pages duplicate verbatim the corresponding pages of Langton's brief in *Spadaccini v. Comm'r of Soc. Sec.,* Civ. No. 12-06246. (The relevant excerpt is attached to the Commissioner's motion brief as Exhibit D. (Docket no. 33-4)) These legal principles are expressed in generic terms that do not require even the alteration of a party's name. Whether this brief is copied from *Spadaccini,* or both are copied from a common source, is immaterial. The point is that no original work was required.

Two pages of Section B of Amparo's brief, pp. 17-19, are identical to pages 14-16 of the *Spadaccini* brief, *id.*. Six pages of Section C of Amparo's brief, pp. 21-27, are identical to pages 29-35 of the *Spadaccini* brief, *id.*

---

[2] For this entry, the Court's analysis is hampered somewhat by the block-billing of discrete tasks performed over a three day period.

5

Four pages of Section A of Amparo's brief are identical (with trivial alterations) to the corresponding portion of the brief Langton submitted in *Phillips v. Astrue*, Civ. No. 12-0198, at pp. 18-23. (Docket no. 33-5)

In short, nothing was required in the preparation of over 20 pages of the Amparo brief but cutting and pasting of prior work producet; the substantial work here was confined to the remaining 9-10 pages of the *Amparo* brief. Although counsel has billed for review of the record, the brief contains no significant "statement of facts with references to the administrative record." *See* Local Civil Rule 9.1(e)(5)(C).³ Virtually all of the record citations in the brief are to the ALJ's decision. The new material consists largely of application of boilerplate legal principles to the ALJ's reasoning. That, of course, is perfectly appropriate. What is in doubt is whether the tailoring of the boilerplate to the facts of this case justifies the hours expended.

I pause to consider the arguments of Amparo's counsel, particularly in his reply to the Commissioner's brief. That submission forcefully argues for the necessity of using standard language and recycled legal arguments. (Docket no. 34, at pp. 3-4) I agree. The Social Security cases filed in this court seek review of regularized administrative procedures, and they inevitably involve recurring legal concepts. Counsel—particularly those who, like the Langton firm, specialize in this area—will develop forms and useful brief points that may be employed again and again.

I repeat: there is nothing wrong with that. Counsel for plaintiffs, counsel for the government, and many a court (including this one) will reuse material from prior Social Security cases. The resulting economies of scale create efficiencies that might be unavailable to a one-time participant. My point is that the public is entitled to the benefit of such efficiencies when counsel bill for their work. *See Menter*, 572 F. Supp. 2d at 566.

I think that the hours billed here are excessive for the preparation of a 30-page brief that consisted of more than 20 pages of recycled content, copied

---

³ This was no trivial omission. As the discussion in my Opinion reveals, the ALJ's decision failed to discuss or account for significant items in the record. Opinion, Docket no. 30 at 4-8. The briefs for both sides, incidentally, missed an issue that was critical to my decision. Amparo initially sought benefits from an onset date of October 1, 2008, but revised his application so that the onset date was May 3, 2010. R 15, 42. Plaintiff's revision of his application substantially undercut the basis for the subsequent decision of the ALJ. (This ALJ, to whom the case was reassigned, was seemingly unaware of the issue when he wrote his decision.) *See* Opinion, Docket no. 30 at 8-10. This issue therefore could not be gleaned from the ALJ's decision, but would only be apparent from a review of the record.

with virtually no alteration. I will deduct 5.5 hours, bringing the allowed total from 23.75 down to 18.25 hours.

The total deductions thus amount to 5.5 hours plus 1.5 hours, or 7 hours; the allowed billable hours therefore are 47.8 hours (claimed) minus 7 hours (deducted), for a total of 40.8 hours.[4]

**ORDER**

The plaintiff having moved for an award of fees in this matter (Docket no. 32); and the Commissioner having responded (Docket no. 33); and the plaintiff having filed a reply (Docket no. 34); and the court having reviewed the submissions and decided the matter without oral argument, pursuant to Fed. R. Civ. P. 78; and good cause appearing therefor;

IT IS, this 17th day of September, 2014

ORDERED as follows:

1. Plaintiff's attorneys, Langton & Alter, Esqs., are awarded their reasonable fees in this matter, pursuant to 28 U.S.C. § 2412;

2. Such fees are awarded at a rate of $183.90 per hour, for a total of 40.8 hours, resulting in a total award of $ 7503.12.

3. Such fees may be paid directly to plaintiff's attorneys, pursuant to an assignment submitted with their motion.

*/s/ Kevin McNulty*
**Hon. Kevin McNulty**
**United States District Judge**

---

[4] This is the first case in which I have been asked to resolve a challenge to fees in a Social Security case. Disregarding the atypical issue of the motion to dismiss for untimeliness, the allowed hours amount to about 30, and counsel's allowed fee to about $5600. That is more than the amount awarded in some cases that have been cited to me, see *Bantleon, supra; Figueroa, supra,* and less than in others, see *Gillem, supra; Bastian v. Comm'r of Soc. Sec.,* 2009 WL 1438224 (D.N.J. May 20, 2009). The facts and circumstances of those fee applications, of course, differ from those here; I cite them only as a rough guide. I may adjust my approach, one way or the other, in light of further experience.